Counsel, would you approach the podium please? Thank you, your honor. And both counsels. Alright, please speak into the microphone and identify yourselves and the party you represent. Just keep in mind the microphone doesn't amplify, it just records. Doug Johnson on behalf of the defendant appellant, Antoine Joiner. Zachary Slavens on behalf of the people of the state of Illinois. Okay, so 15 minutes apiece. Appellant, how much time do you want for a vote? Five minutes. Five minutes. Alright, let's proceed. May it please the court, counsel, my name is Doug Johnson, I represent Mr. Joiner who is serving a 34 year sentence in the Department of Corrections pursuant to his conviction for murder. This case is at the post-conviction petition came here after a first stage dismissal of a post-conviction petition. I'd like to address two issues today, if time allows. One is that the petition was not dismissed within the 90 days the act requires. And two will be that even if it was timely dismissed, it is not frivolous and patently without merit and should have been advanced to the second stage. We filed a petition on July 7th of 2021 that is shown by a file stamp on the petition in the common law record. The case was dismissed on November 1st of 2021. That's over 90 days. So it is, I suppose, not that simple, but to us it is. The lower court, when it dismissed, when the judge dismissed the petition, thought he was within 90 days, but there's nothing in the record of how that was within the 90 days. He just merely said, I'm within the 90 days, I'm dismissing the petition. And now the state takes the position that the post-conviction petition was submitted on July 7th of 2021. They don't use the term filed. They want to stay away from that. And they say it was submitted, but that does not mean that it was filed and docketed, which is the triggering act for the 90-day provision. We believe the state is not correct, and if you apply the correct law and the correct facts of this case, you will see clearly that it was dismissed after the 90 days. The simplest way to determine whether the petition was filed and docketed is to look at the electronic half-sheet in the common law record. That is at page 34 of the common law record, and it reads on that date, post-conviction filed and PC fee not paid. So we submit to you that is under the law of Brooks in 2006, which determined when a case was filed and docketed. A case is filed and docketed when it is entered into the official record and set for future proceedings, or entered into the official record for further proceedings. That happened on July 7th in this case, as we see clearly in black and white. Therefore, the court had until October 7th to dismiss the petition as frivolous and patently without merit, and if it did not do so by that date, it was required to advance the case to the second stage. And then not only does Brooks support us, I think, by the plain language of that case, if we look at People v. Lentz in 2014, the court looked at the official half-sheet record, and in that case, the official half-sheet said that the PC was filed, and on that same date, the clerk sent a letter to post-conviction counsel saying your fee is not paid. In a sense, almost the exact same thing here, except we just have a notice in the half-sheet that said fee not paid. There, the clerk sent a letter. So for those reasons, I submit to you that the court missed the 90-day mandatory rule, and the case should be remanded and advanced. Now, I want to address the merits of the petition, because if we just went back with a frivolous petition, that wouldn't really do us any good. This petition was not frivolous and patently without merit. It certainly passed the low threshold at the first stage of the act. Believe a gist of a constitutional claim that doesn't rebut the record of proceedings. The testimony against our 16-year-old defendant at trial was two brothers, the victims of the shooting, under the influence of marijuana, in a gang, that identified the defendant, who they didn't really know, belatedly after talking to each other while one was in the hospital. Leon Cunningham and Thomas Cunningham were the brothers who stated that the defendant, who they called Monkey Man, was the shooter. I believe we have to look briefly at the trial evidence, because we have to see, well, if you got the defendant caught with a smoking gun and a confession on video, your new witnesses aren't going to do it for you. But here, it was those two brothers with their lengthy criminal records coming in and contradicting each other, saying, well, the defendant was the one that shot us. And there was also forensic evidence. What seems to be an extremely skilled police officer, when he reported to this shooting, he went to a nearby home or gang place where the gang hung out, and he found a hat, the murder weapon, a sweatshirt, clearly things that were tied to the crime. The record doesn't tell us how he could know to do that, but he did it. And he found these things, and lo and behold, when they tested these things for DNA, the hat and, most importantly, the murder weapon and the sweatshirt, all of them, our defendant, Mr. Joyner, was excluded from all of that testing. However, another individual could not be excluded. This is not one in a trillion. This is the lowest I've seen, but it said that one in six blacks, one in 24 whites, could not be excluded. So it isn't a massive, but it is showing a hit on an individual named Matthew Smith. Another shooter implicated. So, and the sweatshirt had gunshot residue on it. So these clearly seem, I don't think the state disputes these were connected to the crime, and here we have forensic evidence excluding our guy and matching to another person. So this was real, I guess we have to accept that the evidence was sufficient to support the convictions at this stage, but it was close. And I submit we didn't need a lot to tip the scales. And so in the post-conviction petition, Darkenia Donner gives an affidavit that says, I was there visiting my old neighborhood, my neighbor, at the time of the shooting. I saw the events surrounding the shooting. I saw the two individuals. I know who Antoine Joyner is. He wasn't one of those people because I have done, in the past, Antoine Joyner's hair, twisting his braids, and it was not him. I know him. So there's nothing in the record that says he's a really good friend. I've known him his whole life. It's just I do know who this is, and they got the wrong boy, is what she said. And not only that, she went to the police. She went to the police and said, I saw it. You have the wrong person. And on her own, just days afterwards, and not only that, she said, and by the way, here's a picture of the real guy. She had it on her phone. She had snapped a picture on her phone of who she thought was the shooter, who she saw. And she said that to the police. And she was known back then. The other person was a friend of, I would say probably candidly not as strong as Ms. Donner, but a friend who says I was with him, could tell the story of what we were doing, what 16-year-olds do. We were getting high. We were riding a bike. We were hanging out in Murray Park. After the shooting, people came and told us what happened. So those are the two. And the state still says, no, the petition was frivolous and patently without merit. That was trial strategy not to call them. And I submit there is just simply no trial strategy. I don't think trial strategy is something that we should even be looking at at the first stage. I think that comes later to say, wait, let the attorney later explain why he didn't call this person. We don't know now. But they speculate and say, no, that was trial strategy. They don't say why. Why don't you call Darkenia Donner? Did she have a criminal history that would have destroyed her? She didn't. But they just say trial strategy. I submit how in the world, common sense, you have a woman who it was important enough to go to the police and say, you got the wrong guy. Here he is. How could you not call this neutral witness to at least come? A, I think it would have changed the case completely or presented a reasonable likely probability that the outcome would have changed. But secondly, what would it hurt? There can be no strategy not to call Ms. Donner at this case, at the trial. And also, Mr. Gist, the same thing. Again, I don't believe he's as strong just because he is a friend. But he was there, and you can cover with him. He puts the last piece of the puzzle together. This is what was going on. The state says, well, the finder of fact, this was a bench trial, heard, finder of fact heard about Ms. Donner, the nature of her proposed testimony. I submit to you that is 100% incorrect. The finder of fact heard is on the cross-examination of a police officer, obviously a skilled witness who has, I wouldn't say a bias, but who believes they got the right guy, is asked, didn't a witness come to you and provide you with information about another suspect? And the police officer said basically, yeah, somebody came, but she wouldn't talk to the state's attorney, and so there was no reason to pursue that. I submit that is very different testimony than, I was there, I saw it, it wasn't him, the defendant I know, it was this person, here's a picture. And so I just don't believe any strategy can justify not calling her or Mr. Gist. In the dismissal order, the judge said, or the judge writes in his written order, aside from, I will say this, if you read the order, it really doesn't bear a great relationship to the case. For instance, one argument was, and the state has not argued this on appeal, but the judge says, well, he's claiming ineffective assistance of counsel now for not calling those witnesses. You could easily have raised that when you raised ineffective assistance of counsel on direct appeal. You couldn't. I mean, they didn't have affidavits of Darkenia Donner. They didn't have an affidavit to Gist, so they couldn't have raised it on direct appeal, but I think that shows you the attention that was paid to this case. But still, if you read the written order, the judge writes, in aggregate, this evidence at most, referring to the evidence in the post-convict petition, in aggregate, this evidence at most, if at all, would raise reasonable doubt at trial as opposed to total vindication or exoneration. That's an admission that it's not frivolous and patently without merit. You're dismissing it as frivolous and patently without merit. I don't have to show you that he's totally, I think I have, but I don't have to show you he's totally innocent or exonerated. I have to present you the gist of a constitutional claim. So how can you say this would raise reasonable doubt at trial? Well, that's what I'm going for. So I think that shows you this order is not only sent in error or put down in error, but it is internally inconsistent and shows you that this petition was not frivolous and patently without merit. So for all those reasons, we're asking for the case to be remanded. Thank you. Any questions, Jessica? Good morning, Mr. Johnson. How are you today? Good. How are you? Good. Ms. Donner never saw the shooting. Is that correct? Events before and after, correct. And saw individuals before and after walking. But she never saw the shooting? Did not see the shooting. That's my only question. Thank you. I have a question. Doesn't the circuit court rules require that a defendant file a post-conviction petition accompanied with a docket fee? The clerk's office – I'm talking about the circuit court rules, not the clerk's office. They probably do. I don't know that the circuit court rules say when that docket fee is to be paid or even if it can be – I can't go outside the record here. Right, right. But wasn't that an issue that it wasn't when it was – when the petition was filed, right, you're saying July 7th, but the docket fee was not paid? It is correct. The docket fee was not paid. I don't believe, though. I think under Lentz, even if that wasn't, you know, to be considered to trigger the 90 days, does the docket fee have to be paid? The answer to that is no because it was already entered into the official record for the proceedings. And secondly, we saw that in Lentz. They used the date even though the fee had not been paid. They used the date and said, in fact, we will use that in favor of the defendant where it says the clerk sent a letter saying pay us. Okay. All right. Judge Walker? Yeah, when you were reading, were you reading from what Judge Gahn stated on the record at the hearing at the first stage? That business about raising reasonable doubt. That's in the written order. It's in the written order. On the record in the proceeding, it was dismissed. The order was handed out and it was dismissed. Judge Gahn was the same trial judge, correct? Yes. Okay. Thank you. Thank you. All right. Scott? You may proceed. Good afternoon, Your Honors. May it please the Court. My name is Zachary Slavens, and I represent the people of the State of Illinois. In this case, the Circuit Court timely entered its summary order, and summary dismissal was proper because the postconviction petition failed to state the gist of any postconviction claim. This Court should affirm the summary dismissal because, one, the Circuit Court timely ruled on the petition within 90 days of its docketing, and, two, none of the postconviction claims were meritorious. Turning to the first issue regarding the docketing, all of Illinois law is clear and consistent. Docketing and filing are two different things, and the use of the separate verb docket in the statute requires a different act than the mere submission and receipt of a postconviction petition. And while Illinois courts through the years have used a variety of indicators for when a petition is docketed, the consistent theme is they're trying to ascertain when the petition is actually placed into the court's records. In Begay, this court found that a petition is not docketed within the meaning of the act until the petition is placed into the court file. Looking at the record on page 34 of the common law record, the July date clearly shows a petition was filed, meaning it was submitted by a petitioner to the clerk. That docket entry does not include a document icon next to it, and if the court goes on to the electronic docket itself on their computers, there's no way to click on the July date and download a copy of the petition. The August 4th date, where it also says postconviction petition filed, it does include a document icon, and through the electronic record, that document can be downloaded. So applying the consistent Illinois law of determining that a document is docketed when it is actually placed into the court file and looking at the record, the only conclusion supported by the record is that while the petition might have been filed on July, it was not docketed, meaning submitted to the files, until August 4th of 2021. Accordingly, the ruling date was on the 89th day and within the 90-day guideline. Petitioner relies on lengths, which does bear some similarities to this case, specifically with regards to the postconviction filing fee. But there's no indication in that case that the docket in that case, or the half sheets, indicated if the actual petition had been submitted to the files or if it had just been filed. So the court relied on the sending of a letter regarding the filing fee to ascertain that the case was moving forward, things were happening, therefore it was engaged in further proceedings. That is very contrary to the case here, where we can look at the docket and see with a precise date stamp of not only when it was filed, but also when the petition was placed into the court's files. And that is the triggering moment for the 90-day clock under the Act. Turning to the merits of the petition, petitioner has raised a number of claims I will address. In particular, his claims that counsel was ineffective or failing to call just in Donner as witnesses. And with respect to the trial strategy argument, counsel misstates our argument. Our argument has never been that there was trial strategy with respect to both. That was limited strictly to Donner. And the people recognize that ordinarily trial strategy is inappropriate at the first stage because it goes outside the record. We would contend that this case is an exception because the trial strategy is apparent on the face of the record. Counsel references Donner by name during his cross-examination of one of the detectives and elicits that she came forward and identified an alternative suspect. And that's all in the record. And, again, case law is clear that if counsel knows about a witness and their potential testimony but decides not to call them, that is a signal of trial strategy. So, again, just looking at the face of the record itself, the trial strategy is apparent. However, the principal argument is and always has been that there is simply not strickland prejudice suffered by the decision not to call Donner and Gist. These were not exceptionally strong affidavits. As this court recognized, Donner did not actually witness the shooting itself. She simply witnessed events surrounding it. Additionally, looking at the Gist affidavit, it lacks dates. It lacks times. It concedes there's a period of time when Gist is not with Petitioner. And that all stands against the very strong identification evidence in this case. Both Leon and Thomas knew Defendant. They were certain of his identity. They were only 10, 15 feet away from him at the time that he shot. They had to look at his face. Leon was very certain of his identity. When the police came to him with a lineup card, he didn't just look at the lineup and say, I don't see the guy who shot me. He looked at that and said, the person who shot me is not in it. I know who he is. He gave the police a description, gave them his nickname, described past events involving the Petitioner. And it was that information that ultimately led to the police identifying Petitioner as the shooter. So this is not a stranger identification. This wasn't a passing look from across the street. These were people who were close to the shooter, who knew the shooter, and could accurately describe and identify him. And the physical evidence, while not directly implicating Petitioner, is consistent with the testimony. The witnesses described the shooter wearing a hoodie. The police recovered a hoodie. The handgun that the police found at the nearby house that was frequented by gang members, that gun matched the shell casings found at the scene of the shooting. And admittedly, the DNA points to involving another individual. There isn't fingerprint evidence. But the stipulations and the testimony in this case all shows it's possible for an individual to handle items without depositing recoverable fingerprints, without depositing DNA that's capable of analysis. So the absence of that information isn't dispositive in this case. It's simply not here. But taking all of the evidence and then looking at the proposed affidavits, there is not a reasonable probability of a different result at retrial, which is the requirement for strictly prejudice. And counsel kind of talked with this briefly with regards to the trial court opinion. But for ineffective assistance counsel, it is critical that the mere possibility of a different result is not sufficient. There has to be a probability of a different result. Considering the fact finder already heard Donner's testimony in essence and rejected the idea of another individual having engaged in the shooting, considering that just, again, was a friend, wasn't even with Petitioner the entire day, this isn't evidence that raises to a probability of a different result. At most, it is a possibility. And to just briefly address the circuit court's comments regarding total vindication, that kind of turns to the actual innocence argument raised by Petitioner, which, again, as we argued, is not freestanding, but even on its merits would still fail because the evidence is not conclusive. So while the circuit court might have couched its opinion on the basis of the total vindication standard, this court may affirm for any basis in the record. And for many of the similar reasons that there's no strictly prejudice, the actual innocence claim would fail because none of the evidence is so conclusive as to probably lead to a different result on retrial. If there are no further questions. Just a quick one. Yeah, I just have a couple. Was there a change after the Lentz case, was there a change in how the circuit court of Cook County handles its filing and docketing system with respect to computerization? As your honors are aware, there has been an ongoing evolution in how the circuit court of Cook County has handled its docketing. I would just note that the Lentz case arose in the second district, I believe. So I'm entirely unfamiliar with how courts in that jurisdiction handle its electronic docket. All I can do is look at our docket and see there's very clearly a document icon on the August 4th date. That is where the petition can be accessed. And all of that is entirely absent from the July date, which simply indicates that a petition was filed. And Illinois courts have been clear. Filing and docketing are different things. The mere submission or receipt of a petition or the act of filing is not sufficient. It must also be docketed. So the payment of the fee, you think, is what triggered the docketing, in your view, of this pleading? The payment of the fee? It appears in this case that the clerk did not enter the petition into the docket until the payment of the fee. And I believe that is consistent with what has happened before in, I believe it was Begay. I could be mistaken on the name of the case. But that was where a petition was first submitted in December, sat in the clerk's records for several months. Counsel eventually motioned it up, refiled it again. It was docketed, I believe, in the next July or June. In this case, though, was the payment made on the day that it shows as being docketed by the clerk's office? Looking at the electronic docket, it appears that the fee was paid on the 4th, and that is what triggered the actual docketing and entry of the petition into the file, which, again, the entry into the file is the consistent triggering act through all Illinois precedent for when the 90-day clock starts. And you think the circuit clerk at Cook County doesn't make mistakes? It's possible that the circuit clerk makes mistakes, certainly. But looking at the docket, the petition was not entered on the July date. And that 90-day clock is important because if the petition is not actually in the file, the case cannot proceed. Nobody can look at it. The court can't review it and make its determinations. It's just sitting in a filing bin, but it's not actually entered in the record for further proceedings, which, again, is what all of the Illinois precedent looks for. Is this in the file? Is something happening with this case? Is it set for further proceedings? The petition is not in the file. Nothing is happening with it. It's just strange that it was filed, but not in the file. And, you know, I'm the most recent person here coming from the Circuit Court of Cook County, and you have tons of issues like that. Now, I want to change the subject now to Donner for just a second. Certainly, Your Honor. You're sort of saying that, well, because the cop was asked about Donner, that somebody came to him, but they had the right eye sort of thing. But if Donner had been called to testify, don't you think her information would have been far more expansive about what she did see, what she did hear, that could be very strong circumstantial evidence? I recognize that Justice O'Neill Burke asked the question that I was going to ask of your opponent with respect to, but Donner didn't see the actual shooting. That's pretty clear from the record. She heard it, though, right? I believe so. And if she had been called as a witness, I would assume that there have been much more substantive evidence that the court would have heard from her about what she saw before and after, what she heard, what she knew, that this police officer just, it was a very short drift, right? There was just a few lines in the cross-examination, Your Honor. And just so I can understand, are you asking about Donner more towards the prejudice prong of the analysis? Yeah, I guess. With respect to the probability of a different outcome that you say at most is just a possibility and not a probability. Yes, Your Honor. She certainly could have added some more color to the information before the trial court, but it wouldn't expand the information before the trial court in entirely new areas. Because it's not as if there wasn't already information that there might have been a different shooter, which is really at most all she could do. She might be able to add additional color to that, perhaps a little bit of additional background. But again, that has to be considered against the strength of the identification. So where you have two individuals who are right there looking directly at the individual who's shooting at him, who know him, who describe him to the police, that is very strong identification testimony. So considering whether that rises to probability, we contend it falls short. Now, the photograph that Donner took, was the person in the photograph ever identified by her by name? Your Honor. Was it Matthew Smith? Is there anything in the record about that? Your Honor, I cannot recall if that was in the record or her affidavit precisely. Okay. One quick question. Yes, Your Honor. Thomas and Yan were allegedly offered some type of favorable deal to testify.  Your Honor, there is absolutely nothing in the record to suggest that they were offered any deal. And indeed, even the petition doesn't specifically state they were offered any specific deal for any specific offense. It is a purely conclusory allegation, which is not sufficient for post-conviction proceedings. Okay. Fine. Thank you. Thank you, Your Honors. Your Honor. I did want that last point about the deals. There is nothing in the record concrete that they received deals. The argument is setting forth their criminal histories and showing throughout, awaiting the trial, their testimony and drawing an inference from that. So I believe it's not completely conclusory, oh, they must have got deals. There is a basis for that argument, but there is nothing beyond that. No, Ms. Donner did not say this is Matthew Smith in the picture. And then, importantly, this thing about icons and downloading and things like that, none of that is in the record about what that icon means or how, I don't know. I think counsel knows, but it's not in the record. So I don't believe any of that can be considered. Because I can tell you just real clearly, well, I'm not going to go outside the record, but it would be important if the clerk was offered the post-conviction fee and said, we don't need that at this time. Again, I don't want to go outside the record, but I only bring it up because the icons, the downloading, none of that is there. So I don't think we can draw, even if that is how it is, it's not there. Begay, the state does rely on Begay. There the post-conviction was stamped, filed in December of 2013. But nothing is on the half sheet. So there's no reference on the official record of that filing. You just have the stamped filing, but not what we have presented, the electronic half sheet that shows on July 7th that the case was entered into the official record. I think counsel is also stretching a bit when he says that this means entered in the official record means the physical post-conviction was entered. Even if we could consider the icons, I don't necessarily think that's what the court meant. The court meant once we, things have started and it is on the record, then that's the triggering date. In Begay, the post-conviction didn't appear on the half sheet until June 26th of 2014. So about six months later. And that's why the July dismissal was timely. The counsel is arguing, well, the defendant, defense counsel had a trial strategy, so Donna was trial strategy. Presenting Donna didn't conflict with the trial strategy that counsel, I guess, may have had. He was trying to prove there's reasonable doubt here. That's what Donna would have established. So if they were contradictory, I understand, well, you can't do that because that would have contradicted, just because counsel had a trial strategy. Almost everybody has a trial strategy. It may be a good one, it may be a bad one. But they weren't mutually exclusive here. So Donna should have been presented. These were not, by any means, I don't believe they can be considered good identifications by Leon and Thomas. Leon was impeached with his grand jury testimony. This shows how credible he was. The grand jury, he said it was a gray sweatshirt on the shooter, and at trial he said black sweatshirt. And then when they said, hey, you said gray, the grand jury said, no, I didn't. I mean, just very clear how credible this gentleman was. Again, the, importantly, Thomas' story was, you know, neither of us identified the shooter right away. But I didn't identify the shooter right away. Then I went and talked to Leon at the hospital. But we didn't talk about who the shooter was. I submit to you guys, it cannot be true. I really think any of us, if we were in this situation, would say, who do you think did this to us? So, again, I think the court can assess how strong these were when we're determining whether it was a strong case that a reasonable probability could not have been created by Donner. The physical evidence, yeah, we believe the physical evidence was involved in this case. That is what the shooter wore, and that is the murder weapon. But our defendant wasn't there. It's not him. And, yes, of course, we know DNA doesn't have to be there, but we have DNA of someone else. And, again, I think those things show the weakness of the case, and it should be up to a reasonable finder of fact to put all these things forward to see if things were right here. Lastly, it is correct that Donner, you know, she's credible. No, I didn't see the exact shooting, but I was there, out there, and I saw right before, right after, and I saw two people run away. And, lo and behold, if you look at the testimony of the neutral witness, Cornelius Blyther, he said he saw two people running from the scene. And the state's theory is it was our defendant and no one else. So, all of a sudden, Donner is telling you it was these two people, I saw them, they weren't the defendant, and this witness who didn't seem that important back at the trial, consistent with that, said, I saw two people running away. And so I think for all these reasons, Donner and Gist should have been called, and for all the other reasons of the petition, we would ask for a remand. Thank you. Thank you, Your Honors. I want to thank counsels for a well-argued matter. Court will take it under advisement. And we are in.